

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/29/2015

| | | |
|---|---|---|
| IN RE: § | | |
| ALETA RENEE CHAPMAN; dba PRO § | CASE NO: 13-31039 | |
| STAR TRUCKING § | | |
|    Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| UNITED STATES TRUSTEE § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-3201 | |
| § | | |
| ALETA RENEE CHAPMAN § | | |
|    Defendant(s) § | | |

## MEMORANDUM OPINION

The United States Trustee seeks to revoke Aleta Chapman's Chapter 7 discharge. Because Ms. Chapman failed to disclose substantial assets and filed false statements with the Court, her discharge will be revoked.

### Jurisdiction

A chapter 7 discharge is revocable under 11 U.S.C. § 727(d). Jurisdiction over matters arising under Title 11 is established by 28 U.S.C. § 1334. The revocation of a discharge is a core matter under 28 U.S.C. § 157. *In re Comu,* 2014 WL 3339593 (Bankr. N.D. Tex. July 8, 2014).

### Background

Ms. Chapman filed a voluntary Chapter 7 bankruptcy petition on February 25, 2013. The petition was filed through her attorney, J. Thomas Smith. When she filed the petition, she simultaneously filed her Schedules (A-J), her Statement of Financial Affairs, and several other documents not directly relevant to this dispute.

Ms. Chapman's bankruptcy was precipitated by a state court judgment against Ms. Chapman and in favor of Thinh Quoc Pham. The bankruptcy appears to have been filed to avoid execution and collection by Mr. Pham, and to allow Ms. Chapman to appeal Pham's judgment.

On March 26, 2013, Ms. Chapman appeared and testified at her § 341 meeting of creditors. The Trustee determined that there were no assets available for distribution to creditors.

The deadline for the filing of objections to Ms. Chapman's discharge was May 21, 2013. Proper notice was served on all creditors. No party-in-interest objected to the issuance of the discharge. On May 22, 2013, the Court granted Ms. Chapman's discharge.

On September 18, 2013, the chapter 7 trustee was discharged of any further duties in Ms. Chapman's bankruptcy case, and the case was closed.

Seven days before the case was closed (i.e., September 11, 2013), Ms. Chapman, acting through a new attorney, had filed a motion to confirm that Bank of America was the holder of only an unsecured claim and was barred by the discharge injunction from acting against Ms. Chapman or her property. In short, the motion alleged that Bank of America did not have a valid recorded lien on Ms. Chapman's home and should be precluded from attempting to foreclose on the home.

At a hearing on October 15, 2013, the Court determined that the September 18th order was issued in error because of the pending September 11th motion. Accordingly, the September 18th order was vacated. However, the Court also ruled that the relief sought against Bank of America could only be considered by an adversary proceeding. Accordingly, the Court denied the September 11th motion without prejudice to the commencement of an adversary proceeding.

On November 18, 2011, Ms. Chapman filed an adversary proceeding seeking the invalidation of the alleged liens against her homestead. That relief was ultimately denied by a final judgment issued on June 16, 2015 in adversary proceeding 13-3315.

When Ms. Chapman attempted to invalidate the lien, her new lawyer—acting in the professional and ethical manner as he was required to do—discovered that Ms. Chapman had failed to disclose her claim against Bank of America. In the process of his investigation, he also discovered other assets that Ms. Chapman had failed to disclose.[1]

On March 26, 2014, Ms. Chapman moved to reopen her case to allow disclosure of certain previously undisclosed assets. The motion was granted on April 24, 2014. On May 16, 2014, Ms. Chapman amended her Schedules and her Statement of Financial Affairs. Five days later, on May 21, 2014, the United States Trustee filed this adversary proceeding seeking to revoke Ms. Chapman's discharge based on her original non-disclosure.

### The Undisclosed Items

There is no dispute that certain items were not originally disclosed by Ms. Chapman. Her own non-disclosure was the reason that she sought to re-open her bankruptcy case. These items include seven bank accounts, a $12,000.00 whole life insurance policy, a $2,431.15 tax refund, causes of action against Bank of America and others, two vehicles, three trucks, and some office equipment. The pretrial statement, jointly signed by counsel to the United States Trustee and Ms. Chapman, addresses the non-disclosures as follows:

> **Chapman denies that she intentionally failed to disclose a counterclaim against Thinh Quoc Pham, mineral rights, bank accounts, a whole life**

---

[1] Although the record is incomplete on this issue, Ms. Chapman's attorney is highly skilled. A highly skilled attorney would have realized that Ms. Chapman's non-disclosures had implications far beyond the possible preclusion of the filing of the adversary proceeding. See *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598 (5th Cir. 2005). The non-disclosures could also have had criminal implications. See 18 U.S.C. § 152 and related statutes. Of course, the risks to Ms. Chapman attendant to a possible criminal prosecution would be substantially ameliorated by her voluntary, subsequent disclosure of the undisclosed assets.

**insurance policy, 2012 tax refund, eight causes of action, two personal vehicles, three trucks, and office equipment on her original schedules, but admits that these assets were disclosed on her amended bankruptcy schedules.**

At trial, there were disputes concerning other items, and whether the other items were also improperly excluded from Ms. Chapman's schedules. These included an interest in a defunct trucking company, and the assets of that company. The Court need not resolve these disputes. Ms. Chapman's initial and admitted failures to disclose mandate the revocation of her discharge.

## Standard for Revocation[2]

Revocation of Ms. Chapman's discharge is required if (i) she obtained the discharge through fraud; and (ii) the United States Trustee (the Plaintiff in this adversary proceeding) did not know of the fraud prior to the granting of the discharge. 11 U.S.C. § 727(d)(1). It is undisputed that the United States Trustee did not know of the non-disclosure prior to the granting of the discharge. Accordingly, the sole issue is whether the discharge was obtained by fraud.

"Fraud" under § 727(d)(1) includes the intentional failure to disclose assets. *In re Darby*, 376 B.R. 534 (Bankr. E.D. Tex. 2007). Nevertheless, the revocation of a discharge is an extraordinary remedy, sparingly applied. *In re Peterson*, 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006).

Although the burden of proof is on the United States Trustee, the burden is only by a preponderance of the evidence. *In re Slack*, 143 F. App'x 628, 629 (5th Cir. 2005).

---

[2] The United States Trustee also seeks revocation of the discharge based on Ms. Chapman's failure to turnover her tax refund and proceeds from the sale of a truck trailer. Because the Court revokes the discharge based on fraud, these issues need not be decided.

A mere omission of assets will not constitute a fraud justifying revocation of the discharge. Instead, the omission must be knowing and intentional. *Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992)

### Responsibility for Non-Disclosure

Unfortunately, this dispute must be resolved through a credibility battle between Ms. Chapman and her former attorney, J. Thomas Smith. Ms. Chapman swears that all of the assets were disclosed to Mr. Smith, and Mr. Smith denies that allegation. To resolve the dispute, the Court conducted extensive evidentiary hearings. These hearings occurred on February 12, 2015 (a hearing that began at 9:04 a.m. and ended at 5:09 p.m., with normal breaks), February 13, 2015 (a hearing that began at 1:32 p.m., and ended at 4:04 p.m.), March 10, 2015 (a hearing that began at 9:01 a.m. and ended at 10:43 a.m.), and April 1, 2015 (a hearing that began at 9:01 a.m. and ended at 11:33 a.m.)

Mr. Smith gave extensive testimony. Although he was initially unable to locate Ms. Chapman's file, most of the file was ultimately located. Mr. Smith gave forthright testimony, and was a highly credible witness. There were instances in which Mr. Smith could have discovered assets or liabilities by Ms. Chapman but the assets did not get disclosed. For example, he failed to disclose lawsuits in which Ms. Chapman was involved, and failed to sift through some of the documents provided by Ms. Chapman to identify each of her bank accounts and vehicles. Although these items might have been discernible had Mr. Smith acted as an investigator of his client, rather than her lawyer, the schedule of assets was signed under penalty of perjury by Ms. Chapman. Although these errors occurred, they did not demonstrate any pattern of non-disclosure by Mr. Smith.

Ms. Chapman also gave extensive testimony. Her testimony lacked credibility. Here are the major problems:

- Ms. Chapman initially testified that she had not authorized Mr. Smith to file her petition, that she had not signed the petition, and that she had not signed her schedules. Although she claims not to have authorized the filing of the bankruptcy petition, she expressed no surprise when she learned that the bankruptcy was filed, attended her § 341 meeting of creditors, and generally participated in the allegedly unauthorized case.

- Although he was originally unable to locate Ms. Chapman's file, Mr. Smith ultimately located and produced signed Schedules and a signed Statement of Financial Affairs. There were minor differences from the signed and the filed versions, but neither the originally signed documents nor the filed documents disclosed the omitted items. When the files had not been located, Ms. Chapman testified that she had never signed them. When they ultimately were located, she denied that the signature on the document was hers, although she admitted (when confronted with the signed document) that the signature was identical to her own. The testimony was not credible.

- At her March 22, 2013 § 341 meeting of creditors, Ms. Chapman testified that she had reviewed and signed her bankruptcy schedules. She testified that she had no additions or corrections to her schedules. She claims that testimony was not accurate, because she believed that her "schedules" only referred to her list of creditors and not to her list of assets. Any hint of credibility of that testimony evaporated when the signed schedules were produced.

- Ms. Chapman signed a sworn statement for the Trustee at or immediately before her March 22, 2013 § 341 meeting of creditors. She claims not to have read or understood the statement, and that she thought that she was only signing an "appearance sheet" at the meeting of creditors rather than a detailed statement. However, Ms. Chapman made at least one correction to the questionnaire before it was delivered to the Trustee. It is not credible that she made a correction, but still believed that she was only signing an appearance sheet.

- Ms. Chapman denies that the signatures on her Schedules and her Statement of Financial Affairs are her signatures. She admits that the signature looks like her signature but is unable to explain how the signatures appeared on the document (insinuating that her signature was forged by Mr. Smith).

Ms. Chapman is an intelligent and educated woman. She is a licensed real estate agent, who participates in continuing education courses. She understands the importance of signing legal documents. Her repeated false testimony can only be explained as an attempt to hide her own prior false statements.

6 / 7

As to her fraudulent intent, the Court need not go far.  After she filed bankruptcy, Ms. Chapman utilized the undisclosed assets as her own.  She received and spent the undisclosed tax refund, she prosecuted the undisclosed lawsuit against Bank of America, and she retained possession of the undisclosed vehicles.

Ms. Chapman's failure to disclose, combined with her false testimony, and her use of the undisclosed assets after the petition date, demonstrate her bad faith and her fraudulent intent.

## Conclusion

The Court will issue a judgment revoking Ms. Chapman's discharge.

SIGNED **June 29, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE